UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GARY JOHN KOVAL,<br><br>Defendant. | No. 1:17-cr-00281-DAD-BAM<br><br>ORDER DENYING DEFENDANT'S MOTION FOR MODIFICATION OF SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)<br><br>(Doc. No. 40) |

Pending before the court is defendant Gary John Koval's motion for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), based in part on the risks posed to him by the ongoing coronavirus ("COVID-19") pandemic. (Doc. No. 40.) For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On January 15, 2020, just over six months ago, defendant was sentenced to a term of 46 months in the custody of the U.S. Bureau of Prisons ("BOP"), followed by a 36-month term of supervised release, following his plea of guilty to committing wire fraud in violation of 18 U.S.C. § 1343. (Doc. Nos. 27, 38, 39.) At that time the court also imposed the mandatory $100 special assessment and ordered defendant to make restitution to the victims of his fraudulent criminal conduct in the amount of $783,950.00. (Doc. No. 39 at 6.) Defendant is currently housed at

1  Fresno County Jail, according to his counsel "due to the quarantine at [Fresno County Jail] and
2  the fact that the Bureau of Prisons . . . is not accepting inmates because of the pandemic."[1]  (Doc.
3  No. 40 at 8; *see also id.* at 12.)
4      On June 2, 2020, defendant filed the pending motion for compassionate release pursuant
5  to 18 U.S.C. § 3582(c)(1)(A).  (Doc. No. 40).  Therein, he contends that he is a "low security risk
6  person, [and] he has a very high vulnerability to COVID-19, and is in a dangerous location."  (*Id.*
7  at 12.)  On June 16, 2020, the government filed its opposition to that motion, and on June 23,
8  2020, defendant filed his reply thereto.  (Doc. Nos. 42, 43.)
9      On July 13, 2020, the parties filed a joint statement, informing the court that they "learned
10 [on] Thursday, July 9, 2020, from the Fresno County Jail that Mr. Koval had tested positive for
11 the COVID-19 virus on or about July 7, 2020."  (Doc. No. 44 at 1.)

## LEGAL STANDARD

13  A court generally "may not modify a term of imprisonment once it has been imposed."
14 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment
15 of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may
16 not be modified by a district court except in limited circumstances.").  Those limited
17 circumstances include compassionate release in extraordinary cases.  *See United States v. Holden*,
18 __ F. Supp. 3d __, 2020 WL 1673440, at *2 (D. Or. April 6, 2020).  Prior to the enactment of the
19 First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the
20 BOP.  18 U.S.C. § 3582(c)(1)(A) (2002).  Under the FSA, however, imprisoned defendants may
21 now bring their own motions for compassionate release in the district court.  18 U.S.C.

---

[1] Defendant notes that he "has [] served four months of his 46 month sentence in the [Fresno County Jail,] and that "[b]ased on actual time served, and without computing time credits, [he] has an estimated date of release in or about November 2023."  (Doc. No. 40 at 8, 12, 22.)  According to the government, however, because defendant "was arrested and has remained in custody since December 18, 2017, he has served approximately 29 months (64.2%) of the full sentence that was imposed[,] [and] [h]is projected release date is March 25, 2021," accounting for good time credits.  (Doc. Nos. 42 at 3; 42-1 at 4.)  Because good time credits can be considered in determining a defendant's projected release date, the court will evaluate the pending motion in light of a projected release date of March 25, 2021 in keeping with the government's estimate. *See, e.g.*, *United States v. Burrill*, No. 17-cr-00491-RS, 2020 WL 1846788, at *1 n.1 (N.D. Cal. Apr. 10, 2020).

§ 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[2] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[3]

---

[2] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[3] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[4]; *see also United States v. Gonzalez*, No. 2:18-cr-00232-TOR, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, a large and growing number of district courts across the country have concluded that because the Sentencing Commission has not amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c). *See, e.g.*, *United States v. Parker*, __ F. Supp. 3d __, 2020 WL 2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a

---

inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, LAW360 (Apr. 14, 2020), https://www.law360. com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, LAW360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[4] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts to have done so have agreed that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id*. Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id*.

*Rodriguez,* 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-cr-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 2020 WL 2572525, at *4; *United States v. Trent*, Case No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

### I.     Administrative Exhaustion

In the pending motion, defendant acknowledges that § 3582(c)(1)(A) requires that he first exhaust the available administrative remedies, but he nevertheless argues that "in light of the time-sensitive nature of this application," as well as the fact that "[d]ue to his incarceration at the [Fresno County Jail], [he] is unable to file a request with the BOP Warden," this court should find that administrative exhaustion would be futile and therefore waive the requirement. (Doc. No. 40 at 12, 20, 21.) The government counters that the administrative exhaustion requirement is "mandatory and jurisdictional" and therefore cannot be waived. (Doc. No. 42 at 4.)

As the COVID-19 virus continues to spread, district courts across the country have been presented with the question of whether § 3582(c)(1)(A)'s administrative exhaustion provision for

defendants seeking to bring compassionate release motions in federal court can be excused. Some court have found that it can be, *see, e.g. United States v. Connell*, __ F. Supp. 3d __, 2020 WL 2315858 (N.D. Cal. May 8, 2020), while others have held that the exhaustion requirement is jurisdictional and cannot be excused under any circumstances, *see, e.g.*, *United States v. Meron*, No. 2:18-cr-0209-KJM, 2020 WL 1873900 (E.D. Cal. Apr. 15, 2020). For the purposes of resolving the pending motion, however, this court need not resolve this issue. As discussed below, the court finds that the pending motion for compassionate release fails to establish extraordinary and compelling reasons warranting defendant Koval's release. Moreover, even if the pending motion did establish such extraordinary and compelling reasons, the court further finds that the requested reduction in defendant's sentence would be inconsistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).

Accordingly, the court declines to address whether defendant has satisfied the administrative exhaustion requirement under § 3582(c)(1)(A) or may be relieved of the obligation to do so and instead turns to the merits of the pending motion.

## II.     Extraordinary and Compelling Reasons

According to the Sentencing Commission's policy statement, "extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). Even though the catch-all of "other reasons" was included in the policy statement at a time when only the BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions for reductions in their sentence under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

The medical condition of a defendant may warrant the granting of compassionate release by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate

release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id*. In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id*. at cmt. n.1(A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, many courts have concluded that the risks posed by COVID-19 may tip the scale in favor of release when the particular circumstances of a case are considered in their totality. *See, e.g., Parker,* 2020 WL 2572525, at *9–10 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates suffering from conditions such as hypertension and diabetes are now at an even greater risk of deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify compassionate release.") (collecting cases); *United States v. Rodriguez*, No. 2:03-cr-00271-AB, 2020 WL 1627331 at *10–11 (E.D. Pa. Apr. 1, 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).

/////

Here, defendant Koval argues that extraordinary and compelling reasons exist for his compassionate release because: (1) he is 77 years old; (2) he "suffers from congestive heart failure following a heart attack, hypertension, and urological problems"; (3) he "has had prostate issues for several years"; (4) in 2016, he had surgery to repair a hole in his skull; (5) in 2007, he underwent open heart surgery; and (6) the Fresno County Jail had, at the time the pending motion was filed, "reported at least one COVID-19 staff case, and eight (8) inmates [we]re [] incarcerated in quarantine areas." (Doc. No. 40 at 1, 11, 18–19.) Defendant argues that based on the foregoing, he "has an extremely high incidence of not only contracting this disease, but perishing from it." (*Id.* at 12.)

The government counters that, "notwithstanding defendant's health conditions, his circumstances do not compel compassionate release." (Doc. No. 42 at 10.) Specifically, the government argues that "[t]he general threat of COVID-19—which poses a risk to every non-immune person in the country—does not satisfy" the extraordinary and compelling reasons requirement. (*Id.* at 11.) While the government does not dispute defendant's diagnosis of hypertension, it contends that general hypertension is not listed by the Centers for Disease Control ("CDC") as a high-risk factor for severe illness from COVID-19. (*Id.* at 11.) However, on June 25, 2020—after the government filed its response—the CDC updated its list of risk factors, and hypertension is now so listed. *See People Who Are at Higher Risk for Severe Illness*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/ people-at-higher-risk.html (last reviewed July 24, 2020). The government concedes that "defendant's heart condition, including [the] 2007 bypass and stent procedure and potential heart attack, would qualify as a CDC risk factor," but it argues that defendant has not supported his claim that he suffers from heart failure. (Doc. No. 42 at 3, 12.)

In reply, defendant asserts in conclusory fashion that he suffers from heart failure, but does not address the government's contention that he has failed to support his claim of that diagnosis by coming forward with evidence. (Doc. No. 43 at 7.) Defendant also notes that since filing the pending motion, the Fresno County Jail "reported that it [has] . . . COVID-19 positive
/////

8

1 inmates in its facility," and that those inmates were housed in the same part of the jail that
2 defendant is housed in. (*Id.* at 6.)

3       The court finds that the medical records in this action do establish that defendant
4 underwent a skull repair surgery in 2016 and open heart surgery in 2007 and that he suffers from
5 essential (primary) hypertension and various heart-related medical conditions, including
6 nonrheumatic mitral valve disorder, old myocardial infarction, and the "presence of aortocoronary
7 bypass graft." (Doc. Nos. 42-1 at, Ex. 3; Doc. No. 33 at 11.) Thus, as noted by the CDC,
8 defendant Koval is at increased risk for suffering severe illness from COVID-19, regardless of
9 whether his medical record supports a diagnosis of heart failure. Nevertheless, in this case, the
10 court does not find extraordinary and compelling reasons justifying compassionate release
11 pursuant to § 3582(c)(1)(A) in part because defendant Koval has already contracted COVID-19.
12 (*See* Doc. No. 43.) As a result, granting him release arguably "will not provide him with the
13 protection sought by his motion: relief from the risk of contracting COVID-19." *United States v.*
14 *Russo*, 1:16-cr-00441-LJL, 2020 WL 1862294, at *8 (S.D.N.Y. Apr. 14, 2020); *see also United*
15 *States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *1 (D. Nev. May 28, 2020)
16 ("The premise of [defendant's] request was that his release would help prevent him from
17 contracting the virus. That need vanished when [defendant] tested positive for the virus.").

18       The court certainly recognizes that the Fresno County Jail has failed to control the
19 outbreak of COVID-19 at that institution. According to a recent news report, the Fresno County's
20 Sheriff's Department "announced on [July 21, 2020] that 471 inmates have tested positive for the
21 coronavirus" at the Fresno County Jail. *See New details released on COVID-19 outbreak at*
22 *Fresno County Jail*, https://abc30.com/fresno-county-coronavirus-jail-covid-outbreak-cases-
23 covid-19/6328997/ (last reviewed July 24, 2020). Moreover, the undersigned is receiving regular
24 situation reports from the U.S. Marshal regarding the COVID-19 situation at the Fresno County
25 Jail, where well over 200 of this court's detainees are in custody along with well over 2,000
26 county inmates. At one point in July the number of federal prisoners at that jail to have tested
27 positive for the virus was nearing 100, including defendant Koval. However, according to the
28 report received by the undersigned on August 4, 2020, the number of active cases among federal

prisoners there is now down to eight.  Moreover, defendant Koval has not appeared on the list of active cases at the jail for many days now, having apparently recovered.  Nonetheless, the situation with the virus at the Fresno County Jail obviously remains an extremely serious one.  However, based on the record before the court, there is no reason to believe that the jail staff is unable to monitor and care for defendant Koval.[5]

Accordingly, the court concludes that defendant has not met his burden of demonstrating extraordinary and compelling reasons for compassionate release under § 3582(c)(1)(A) and therefore his motion will be denied.[6]

### III.   Consistency With the § 3553(a) Factors

Finally, even if defendant Koval's motion were supported by a showing of extraordinary and compelling reasons for his compassionate release, the undersigned is not persuaded that the

---

[5] The parties' July 13, 2020 joint statement informing the court of defendant's July 7, 2020 positive test result for the virus did not state whether he was symptomatic or asymptomatic at that time and no further update has been provided to the court with regard to defendant's condition or the Fresno County Jail's medical staff response to his having tested positive for COVID-19.  However, based upon the near daily reports the undersigned continues to receive, it appears that defendant Koval has, thankfully, not become severely ill.  *See United States v. McCollough*, No. 15-cr-00336-001-PHX-DLR, 2020 WL 2812841, at *2 (D. Ariz. May 29, 2020) ("Since Defendant has contracted COVID-19, the relevant questions concern (1) the course of his illness, (2) the state of his health, (3) his prognosis, and (4) the adequacy of the care and treatment being provided to him in BOP given his pre-existing conditions. . ..  Counsel informed the Court that Defendant had a mild case of the virus and has recovered.  There is no evidence that the circumstances surrounding Defendant's health or treatment are extraordinary or compelling."); *United States v. Ayon-Nunez*, No. 1:16-cr-00130-DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) ("Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.").  The news story cited above notes that after testing positive, "[f]ollowing the CDC guidelines, the inmates [in Fresno County Jail] are isolated until they are deemed COVID-19-free."  At this juncture, defendant Koval has not persuaded the court that the Fresno County Jail is unable to adequately monitor and care for him.

[6] In the pending motion, defendant states that his "son, Judd Koval, who owns a residence in San Diego California has agreed that Mr. Koval can reside with him." (Doc. No. 40 at 8.)  Setting aside that defendant has not attached a declaration from his son so attesting, the court has additional concerns about the sufficiency of this release plan.  Namely, the PSR report notes at the time that defendant was indicted in this action, he was "homeless and living out of his car." (Doc. No. 33 at 6.)  Given that defendant has already tested positive for COVID-19 and given that he has provided no details in support of his release plan, the court has concerns that granting him compassionate release could both increase his own risk of serious illness as well as that of the general public's.

requested reduction in sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).[7] *See Parker,* 2020 WL 2572525, at *11.

In the pending motion, defendant argues that consideration of the § 3553 factors supports his request for compassionate release because "[h]e has no history of violence, no gang affiliation, and no disciplinary history at the [Fresno County Jail]." (Doc. No. 40 at 22.) The government counters that "defendant perpetrated an elaborate fraud scheme that stole over $780,000 from more than ten victims" and lasted for approximately two years. (Doc. No. 42 at 12.) The government also notes that defendant's conviction for fraud in this action was not his first conviction for fraud, noting that "[h]e stole more than $1 million in a similar fraud scheme in 2007, and was convicted in state court in 2008." (*Id.*) Notably, the government points out that during the pendency of that first fraudulent scheme, defendant Koval suffered cardiac events and underwent medical treatments in 2007, but that he nevertheless continued to perpetrate that fraud scheme "[despite] suffering from the conditions he claims merit his release." (*Id.*) The government argues that "defendant does not adequately address the [§ 3553] factors in his motion, and notably says very little about his criminal conduct, and nothing about deterrence or just punishment." (*Id.* at 13.) In his reply, defendant Koval does not address the government's arguments, instead pointing out that his "conduct did not involve firearms" and that he is "not a violent person and poses no risk to anyone." (Doc. No. 43 at 8, 9.)

As noted above, defendant is currently serving a 46-month sentence for committing wire fraud after just being sentenced on January 15, 2020. (*See* Doc. Nos. 27, 38, 39.) The offense

---

[7] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

11

was an extremely serious one. Defendant's innocent victims lost over $780,000.00 as a result of him defrauding them. With his acceptance of responsibility acknowledged, the presentence report in his case determined that his total offense level was 22, that his criminal history category was II, and his advisory sentencing guideline range therefore called for a term of imprisonment of between 46 and 57 months. (Doc. No. 33 at 3, 7–8.) The probation officer did not identify any factors that would warrant a departure from the applicable sentencing guideline range. (*Id*. at 14–15.) After considering the § 3553(a) factors, the undersigned sentenced defendant to a low end of the guidelines sentence of a 46-month term of imprisonment. (Doc. Nos. 38, 39.)

Defendant Koval's criminal history score of 3 placed him in category II of the Sentencing Guidelines, and there were fifteen identifiable victims of his wire fraud crime. (Doc. No. 33 at 6, 9.) In 2008, defendant was convicted in Los Angeles County Superior Court of "grand theft: money of personal property (felony)." (*Id.* at 9.) The victim in that case purchased bank guarantees from defendant, thereafter transferred three million dollars to defendant's bank account, and defendant did not satisfy the parties' memorandum of understanding, instead "st[ealing] the victim's money by diverting funds from their intended use to his (the defendant's) personal use." (*Id.*) In light of this very troubling background and history of defrauding innocent victims, consideration of the risk of recidivism on the part of defendant Koval weighs against the granting of compassionate release in this case. *See, e.g.*, *United States v. Scher*, No. 15-cr-00614 SOM, 2020 WL 3086234, at *3 (D. Haw. June 10, 2020) ("In considering Scher's history and characteristics and the need to afford adequate deterrence for his crime, this court notes Scher's extensive history of crimes of fraud or deceit. . .. The underlying crime in this case involves taking money from Social Security that Scher was not entitled to. In short, this court has to be concerned that Scher will find new victims.").

In addition, the court is not persuaded that defendant has established his post–offense rehabilitation since his sentencing just a few months ago. Neither defendant's motion nor his reply in support of that motion describe any rehabilitation efforts that he has undertaken while in custody, beyond stating that he has had no disciplinary infractions at Fresno County Jail. In fact, defendant Koval presents no argument or evidence to support his claimed rehabilitation. *Cf.*

*Parker*, 2020 WL 2572525, at *11 (granting a defendant compassionate release in part because he demonstrated rehabilitation during his imprisonment by earning two associate degrees, participating in other continuing education courses and working as an education instructor, "suicide companion," and career services clerk) (collecting cases).  Moreover, even if defendant Koval had demonstrated his full rehabilitation since sentencing, rehabilitation alone is not enough to warrant compassionate release.  *See* 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13, cmt. n.3.

Lastly, as of the date of this order, defendant Koval has served approximately 31 months of his 46-month sentence.  Defendant's 46–month sentence was a low end of the advisory sentencing guideline range sentence.  Granting his compassionate release motion would reduce his sentence to a 31-month term, which is well below the advisory sentencing guidelines range in his case.  In the court's view, a 31-month sentence would not adequately reflect the seriousness of defendant's offense of conviction, promote respect for the law, provide just punishment, or afford adequate deterrence to criminal conduct.  *See* 18 U.S.C. § 3553(a); *see also United States v. Purry,* No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *United States v. Shayota,* No. 1:15-cr-00264-LHK-1, 2020 WL 2733993 at *5–6 (N.D. Cal. May 26, 2020) ("The length of the sentence remaining is an additional factor to consider in any compassionate release analysis, with a longer remaining sentence weighing against granting any such motion.") (citation omitted).[8]

---

[8]  In the pending motion, defendant also appears to ask the court to release him on home confinement.  (*See* Doc. No. 40 at 25; *see also* Doc. No. 43 at 11.)  However, the CARES Act "'authorizes the BOP—not courts—to expand the use of home confinement' under 18 U.S.C. § 3624(c)(2)."  *United States v. Fantz*, No. 5:14-cr-32-BR, 2020 WL 3492028, at *1 (E.D.N.C. June 26, 2020) (quoting *United States v. Nash*, No. 19-40022-01-DDC, 2020 WL 1974305, at *2 (D. Kan. Apr. 24, 2020) (collecting cases)); *see also United States v. Rice,* Case No. 12-cr-818-PJH, 2020 WL 3402274, at *4 (N.D. Cal. June 19, 2020) (denying a defendant's request for release to home confinement made in conjunction with his motion for compassionate release because "the court has no authority to designate the place of confinement" because the "Bureau of Prisons has the statutory authority to choose the locations where prisoners serve their sentence."); *United States v. Gray*, No. 4:12-cr-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (holding that the CARES Act "does not authorize the court to order defendant's placement in home confinement").  The district court may only impose home detention as a condition of supervised release, rather than as part of a sentence of imprisonment.  *See Connell*, 2020 WL 2315858, at *5, n.6 & *7 (N.D. Cal. May 8, 2020).

**CONCLUSION**

Because defendant Koval has failed to demonstrate that "extraordinary and compelling" reasons exist justifying his release under 18 U.S.C. § 3582(c)(1)(A) or that his release from imprisonment at this time would be consistent with consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), his motion for compassionate release (Doc. No. 40) is denied.

IT IS SO ORDERED.

Dated: __August 4, 2020__          *Dale A. Drozd*
                          UNITED STATES DISTRICT JUDGE